UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KNIGHT INDUSTRIES & ASSOCIATES,
INC., a Michigan corporation, with
assumed name, KNIGHT GLOBAL,

           Plaintiff,

v.

EURO HERRAMIENTAS, S.A.U., a
Spanish company; EL.CA SYSTEM, an
Italian company; and AMS S.r.l., an Italian
company,

           Defendants.
_____/

CASE NO. 2:12-cv-14405

HON. MARIANNE O. BATTANI

**OPINION AND ORDER GRANTING IN PART AND DENYING IN
PART DEFENDANTS' MOTION TO STRIKE, GRANTING
DEFENDANTS' MOTION TO DISMISS, AND DENYING
DEFENDANTS' MOTION FOR MORE DEFINITE STATEMENT**

      This matter is before the Court on Defendants Euro Herramientas and EL.CA System's Motion to Dismiss Count VI of Plaintiffs' Amended Complaint (Doc. 30), Motion to Strike Claims (Doc. 28), and Motion for More Definite Statement of Plaintiff's Contract Claim (Doc. 29). Because the issues are fully briefed and oral argument will not aid in the disposition of this matter, the Court will resolve the matter on the briefs submitted by the parties. See E.D. Mich. L.R. 7.1(f)(2). For the reasons stated below, Defendants' Motion to Strike is **GRANTED IN PART** and **DENIED IN PART**, Defendants' Motion to Dismiss is **GRANTED**, and Defendants' Motion for More Definite Statement is **DENIED**.

**I.      PROCEDURAL HISTORY**

Plaintiff Knight Industries & Associates, Inc. ("Knight") filed its original complaint against Defendants EL.CA System ("ELCA"), AMS S.r.l. ("AMS"), and Euro-Herramientas, S.A.U. ("EURO") alleging breach of contract, civil conspiracy, tortious interference with contractual relations, defamation, and for a declaratory judgment that EURO defend and indemnify Knight in a lawsuit filed in Italy by ELCA. (Doc. 1). After oral argument on ELCA's first motion to dismiss (Doc. 14), the Court dismissed Knight's defamation claim, tortious interference with business expectancy claim, and declaratory judgment claim against ELCA (Doc. 26). The Court further ordered that Knight file an amended complaint "to more definitively state its allegations regarding its remaining claims," but also permitted Defendants to file an additional 12(b) motion. Knight filed its amended complaint on March 14, 2013. Soon thereafter, EURO and ELCA filed the instant 12(b) motions. On June 10, 2013, per stipulation, the Court entered an order dismissing Defendant AMS from the action with prejudice. (Doc. 40).

**II.     STATEMENT OF FACTS**

Plaintiff Knight is a Michigan corporation that manufactures ergonomic material handling equipment. Defendant EURO is a Spanish company with its principal place of business in Madrid, Spain. On April 14, 2000, Knight and EURO entered into a Distribution Agreement for EURO to sell certain Knight products in Spain and Portugal. The agreement was for a three year term to "renew automatically for successive periods of 12 months each." In 2007, the geographic scope of the agreement expanded to include Germany, France, the United Kingdom, and Italy. In addition to the distribution

agreement, Knight and EURO entered into a License, Confidentiality and Non-Disclosure Agreement to protect Knight's intellectual property and technical data.

In October 2008, EURO requested Knight to ship an "XYZ servo system" to the French Railroad via EURO's sub-distributor, Advanced Industrial Solutions (AIS), located in Aigremont, France. During installation, AIS went out of business and EURO never received payment for the products. Consequently, EURO never paid Knight. Knight alleges that it orally agreed to forgive payment from EURO if it returned the servo system, but EURO failed to do so.

On January 1, 2009, EURO and Defendant ELCA (an Italian company) entered into a Distributor Agreement for ELCA to become EURO's exclusive distributor of Knight products in Italy. The agreement required EURO to provide ELCA with "reasonable technical, sales and marketing assistance and training to carry out the terms and conditions of this agreement." EURO distributed Knight products to ELCA, who, in turn, sold them to AMS. After ELCA received payment, it would forward payment to EURO, who then forwarded payment to Knight.

In June 2010, EURO contracted with Knight to provide a servo to EURO's sub-distributor in Holland (not ELCA). The sub-distributor paid EURO for the servo, but EURO never forwarded payment to Knight. In June 2011, Knight shipped $30,000 worth of "rail and torque pack products" directly to ELCA with EURO's consent. Knight never received payment for those goods. Knight also shipped approximately $200,000 worth of products to EURO via ELCA's request for installation in Fiat's assembly plants in Italy. Knight asserts it is still owed $170,000 for those products.

Also in 2011, Knight and ELCA agreed, with the consent of EURO, that ELCA perform custom "design and build" projects in Europe using Knight products. Shortly thereafter, ELCA contracted with Fiat to build two "gearbox lifting systems" for installation at the Italy and Serbia facilities. According to Knight, ELCA failed to properly submit the technical scope of the work to Knight, preventing Knight from assisting in the project design. ELCA also allegedly failed to order the proper Knight parts and failed to properly install such parts. Subsequently, Fiat rejected the "gearbox lifting system." Knight also alleges that EURO and ELCA failed to support Knight in servicing its products at the Fiat facilities, which required Knight to hire a third party to correct the machinery.

On March 14, 2013, Knight filed its amended complaint alleging breach of contract, declaratory judgment as to EURO, conversion and unjust enrichment, fraud as to ELCA, and civil conspiracy. EURO and ELCA now move to dismiss the civil conspiracy claim, strike allegations relating to the fraud and conversion and unjust enrichment claims, and for a more definite statement of Knight's breach of contract claims.

### III.   ANALYSIS

#### A.   Motion to Strike Claims

Federal Rule of Civil Procedure 12(f) provides that the "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). Defendants argue that the Court's prior order only permitted Knight to clarify its remaining claims, not allege new claims. Defendants point out that Knight did not include Count IV (conversion and unjust enrichment) and

4

Count V (fraud) in its original complaint.  Therefore, those claims should be stricken from the amended complaint.  Alternatively, Defendants argue the claims should be dismissed because they are not properly pled.

### 1. The Court's Order Dated March 14, 2013

The Court's order permitted Knight to amend its original complaint "to more definitively state its allegations regarding its remaining claims." (Doc. 26).  The parties dispute the Court's intent in issuing the order, i.e., whether it allowed Knight to more specifically allege civil conspiracy by including allegations of an underlying tort.  At the hearing, the Court dismissed Knight's only claim grounded in tort: tortious interference with a business relationship.  If the Court intended to preclude Knight from alleging an underlying tort necessary for its civil conspiracy claim, it would have dismissed the claim at the hearing.  Defendants' argument is without merit.

### 2. Unjust Enrichment

Defendants assert Knight's unjust enrichment claim fails because Knight alleged an express contract in its amended complaint.  However, Knight asserted a breach of contract claim against ELCA, with whom it never entered into an express contract.  Instead, Knight alleged "an agreement" with ELCA for the performance of custom "design and build" projects in Europe. (First Am. Compl. at ¶ 63).  The complaint further alleged that Knight sent ELCA $30,000 worth of "rail and torque pack products" for which Knight never received payment.  (First Am. Compl. at ¶ 71).  Certainly, these allegations suffice to state a claim of unjust enrichment against both Defendants absent an express or written agreement.  Regardless, unjust enrichment claims may be pled alternatively to breach of contract claims.  See Fed. R. Civ. P. 8(d)(2).

3. Conversion

Next, Defendants argue Knight's conversion claim fails because actions for conversion of money are limited. "There can be no conversion of money unless the defendant is obligated to deliver specific money to the plaintiff." Dailey & Stearn Law Firm, P.L.C. v. Ivanay, 2013 WL 1631988 *3 (Mich. Ct. App. April 16, 2013) (citing Garras v. Bekiares, 23 N.W.2d 239, 242 (Mich. 1946)). In the context of money, the defendant "must have obtained the money without the owner's consent to the creation of a debtor-creditor relationship" and "must have had an obligation to return the specific money entrusted to his care." Head v. Phillips Camper Sales & Rental, Inc., 593 N.W.2d 595, 603 (Mich. Ct. App. 1999) (internal citation and quotation marks omitted).

An action for conversion does not arise through mere nonperformance of a contractual obligation. Here, Knight alleges that EURO and ELCA failed to remit payment in the form of checks or funds for the products provided. Knight does not allege that it entrusted any specific money to either Defendant, nor does it allege it is entitled to any specific money for the products. Here, Knight's core argument is that it is entitled to a sum equal to the price of the goods it provided to Defendants pursuant to each contract. This does not amount to a claim of conversion of money, but merely a breach of contract. As such, the claim will be dismissed.

4. Fraud

Count V of Knight's amended complaint asserts fraud against ELCA based on false representations regarding ELCA's knowledge and expertise in the field of ergonomic equipment. In order to maintain a claim of fraud, a plaintiff must demonstrate:

6

> (1) the defendant made a material misrepresentation; (2) the representation was false; (3) when the defendant made the representation, the defendant knew that it was false, or made it recklessly, without knowledge of its truth and as a positive assertion; (4) the defendant made the representation with the intention that the plaintiff would act upon it; (5) the plaintiff acted in reliance upon it; and (6) the plaintiff suffered damage.

M & D, Inc. v. McConkey, 573 N.W.2d 281, 284 (Mich. Ct. App. 1997). Claims of fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "At a minimum, [a plaintiff] must allege the time, place and contents of the misrepresentations upon which they relied." Frank v. Dana Corp., 547 F.3d 564, 570 (6th Cir. 2008).

In it amended complaint, Knight alleges that ELCA misrepresented its skill and expertise regarding ergonomic equipment, its expertise in providing technical support, and its skill regarding the custom design and build process. (First Am. Compl. at ¶ 87). However, Knights fails to specifically identify what ELCA employee made the statements or when and where they were made. In addition, Knight does not allege facts tending to demonstrate the falsity of ELCA's representations regarding its skill and expertise. Instead, Knight relies on conclusory allegations to support its claim. At a maximum, the Court may infer that ELCA merely put little effort into supporting Knight's products, tantamount to a breach of contract, but not fraud. This is insufficient to satisfy Rule 9(b). See Smith v. Bank of Am. Corp., 485 F. App'x 749, 754 (6th Cir. 2012) (holding that fraud claim failed to meet Rule 9(b) particularity standard when it failed to identify the time and place of the alleged misrepresentations).

Knight argues that the affidavit of Rudy Colombi supports its claim of fraud. The affidavit was not attached the original or amended complaint. Therefore, it may not be

7

considered by the Court. However, even if the Court took the affidavit into consideration, it does nothing to bolster Knight's fraud claim. The affidavit contains the same conclusory allegations that lack the requisite particularity under Rule 9(b). Therefore, the claim fails.

### B. Motion to Dismiss Conspiracy Claim

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted if "'it fails to give the defendant fair notice of what the . . . claim is and the ground upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)). A court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." Id. at 570. If the complaint contains well-pleaded factual allegations, the court must assume their veracity; but it need not assume the truth of bare legal conclusions. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

Defendants move to dismiss Knight's civil conspiracy claim. "A civil conspiracy is a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a purpose not unlawful by criminal or unlawful means." Admiral Ins. Co. v. Columbia Cas. Ins. Co., 486 N.W.2d 351, 358 (Mich. Ct. App. 1992). It requires proof of an agreement to achieve the objective of the conspiracy. Fremont Reorganizing Corp. v. Duke, 811 F. Supp. 2d 1323, 1341 (E.D. Mich. 2011). In addition, a plaintiff asserting civil conspiracy must demonstrate some underlying tortious conduct, as civil conspiracy is not an independently actionable tort. Advocacy Org. for Patients & Providers v. Auto Club Ins. Ass'n, 670 N.W.2d 569, 580 (Mich. Ct. App. 2003).

Defendants argue that Knight's civil conspiracy claim fails because (1) Knight failed to plead an underlying tort and (2) Knight failed to plead the conspiracy claim with specificity. In contrast, Knight asserts that it properly pled claims of conversion and fraud within its amended complaint. It also argues that it need not plead its civil conspiracy claim with specificity, as only claims of fraud and mistake are subject to a heightened pleading standard under Fed. R. Civ. P. 9(b). On this point, Knight is incorrect.

"It is well-settled that conspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim . . . ." Gutierrez v. Lynch, 826 F.2d 1534, 1538 (6th Cir. 1987). Indeed, "pleading requirements governing civil conspiracies are relatively strict." Fieger v. Cox, 524 F.3d 770, 776 (6th Cir. 2008).

In the amended complaint, Knight alleges the following with respect to its civil conspiracy claim:

> 93. Upon information and belief, the Defendants knowingly and with intent to deceive Knight Global entered into a secret agreement whereby they split amongst themselves the Product costs due to Plaintiff.
>
> 94. As of June 28, 2012, [EURO] denies that [ELCA] owes it any payment for Knight Global products provided. (citations omitted)
>
> 95. [ELCA] denies that it owes [EURO] for any shipment of product that it received.
>
> 96. [AMS] claims that it paid all accounts due to [ELCA].
>
> 97. In the meantime, [EURO] has failed to pay Knight Global for invoices owed and which are long overdue.
>
> 98. The Defendants acted in concert, entering into a conspiratorial agreement, to accomplish an unlawful purpose that is to convert, to aid

9

and abet the conversion of, and to defraud monies from [Knight], thereby unjustly enriching themselves at the expense of Knight.

(First Am. Compl. at ¶¶ 93-98).

As stated above, Knight's tort claims of fraud and conversion fail. Therefore, because there is no underlying tort, the civil conspiracy claim also fails. Regardless, the conspiracy claim is not pled with specificity. Knight broadly alleges that EURO and ELCA entered into an agreement to split the costs of the products Knight shipped overseas. However, Knight does not allege actions by EURO and ELCA that demonstrate an agreement to split product costs. See Fremont, 811 F. Supp. 2d at 1342 ("plaintiff has not alleged any acts by [defendant], . . . tending to show an agreement"). Other than bare conclusions, there are no facts alleged in the amended complaint that support Knight's theory. Reading the allegations liberally, the only wrongful conduct alleged is that EURO failed to pay Knight for the products. This is merely a restatement of Knight's breach of contract claim.

### C. Motion for More Definite Statement

Last, Defendants move for this Court to order Knight to more definitively state its contract claims. Rule 12(e) provides that a party may move for a more definite statement of a claim if the claim is "so vague or ambiguous that the party cannot reasonably prepare a response. Fed. R. Civ. P. 12(e). The Court has broad discretion to grant such a request.

In accordance with the Court's previous order, Knight more definitively stated its contract and civil conspiracy claims. In its amended complaint, Knight alleges the existence of a written Distribution Agreement with EURO and the terms of such agreement. Knight also alleges that EURO breached the agreement by failing to pay for

products and failing to provide support for the products overseas. Under the agreement, EURO was required to properly instruct and supervise its sub-distributors (ELCA), a term Knight alleges EURO breached. Knight also claims that ELCA failed to remit payment for products and that ELCA failed to properly complete its custom "design and build" projects. Knight further alleges ELCA failed to adequately service the machinery and handle customer complaints. Although Knight does not allege a written agreement between it and ELCA, it does allege the existence of an oral agreement for the shipment of specific products overseas.

The Court finds Knight clearly stated its breach of contract claims against both Defendants. The amended complaint identifies the agreements, the terms of such agreements, the alleged breach, and damages. Certainly, Defendants possess enough information of Knight's plausible claims to form a defense. Defendants' cryptic reading of the amended complaint is not well-taken.

## V.  CONCLUSION

Accordingly, Defendants' Motion to Strike is **GRANTED IN PART** and **DENIED IN PART**, Defendants' Motion to Dismiss is **GRANTED**, and Defendants' Motion for More Definite Statement is **DENIED**.

**IT IS SO ORDERED.**

                                            s/Marianne O. Battani
                                            MARIANNE O. BATTANI
                                            UNITED STATES DISTRICT JUDGE

DATE: July 17, 2013

## CERTIFICATE OF SERVICE

    I hereby certify that on the above date a copy of this Order was served upon all Counsel of record via the Court's ECF Filing System.

s/Bernadette M. Thebolt
Case Manager
